THE STATE v. ABNER STITES and OTHERS.

The written petition for a road is more sure proof of the route applied for, than the subsequent declaration of one, or even of all the applicants.

This court will take the intention of the surveyors from their own unambiguous language in the document, which they have executed, and which the law has provided to evince and preserve their intention, and not from the belief or understanding of one of the applicants, and still less of the opponents of the road.

Is this court legally authorized to enquire into the motives, which may have induced the determination of the freeholders, and make them the basis of an order to set aside the return of a road?  Quere.

This court will not, on slight grounds, sustain an objection, which if true, would be discreditable to the freeholders.

---

This was a certiorari removing from the court of Common

Pleas of the county of Essex, the record of a road. Several reasons were filed and argued for setting aside the return, which are reviewed by the Chief Justice, who delivered the opinion of the court.

*Frelinghuysen* and *Halsey* for setting aside the return.

*J. J. Chetwood* and *Hornblower*, contra.

EWING, C. J. The first reason assigned for setting aside the record of the road in question is that the road returned on the map, is not the road intended to have been laid out.

This reason does not appear to me to be supported in point of fact.

In the first place, the road as returned, does clearly appear to be the road applied for, and such therefore as the applicants intended.

The petition of the applicants and the order of the court founded upon it propose a route along the lines and to the corners, and across the lands, of certain persons particularly named, and the return corresponds therewith in all respects. The petition and order, after beginning in the road from New-Providence to Springfield, run on the line of the lands of the Stites, Lum, Hand and Morehouse, and the return follows the same line giving the course and the respective distances. The application then runs through the lands of Abner Stites until it strikes a line of John Osborn and Moses Lum ; so is the return. Thence on their line until it strikes a line of Joseph Doty ; the return is the same. Thence across his land until it strikes a corner of said Lum and the line of said Doty ; the return is in exact conformity. Thence on their line until it intersects the road from Brown's to Springfield ; the return pursues that line and terminates at the road. There is not the slightest evidence that the courses and distances given in the return vary from the actual courses and distances of the lines to which they are said to belong, or lead elsewhere than to the points and corners which are mentioned in the petition and return. Mr. Dod, the practical surveyor, examined as a witness by the prosecutors of the certiorari, does not profess to have run the lines of the respective land owners ; nor does he say that the lines set forth in the return do not correspond therewith. He ran the line of a cer-

tain drift way, or gangway, or ancient lane, which extends part of the route, but is in no wise mentioned or referred to by the applicants in their petition. The only color of evidence that the application intended a different route from that which is returned is from one of the witnesses, Israel Doty, who says Mr. Lum, an applicant, told him he had applied for the road on the drift way. But the written petition is far more sure proof of the route applied for than the subsequent declarations of one or even of all the applicants.

In the second place, there is no sufficient and satisfactory proof that the route as returned is different from that adopted by the surveyors and intended to be laid. One of the witnesses says " Mr. Lum, the Stites and others of the neighborhood," pointed out to him where the road was supposed and intended to be laid by the surveyors and the place which they pointed out was the old drift way. But it is clear that we are to take the intention of the surveyors from their own unambiguous language in the document which they have executed, and which the law has provided to evince and preserve their intention ; and not from the belief or understanding of one of the applicants, and still less, of the opponents of the road. The opinion expressed by Mr. Tooker is entitled to more attention. He thinks that the whole course of the road is different from what they intended. But I am not satisfied to yield to the conviction of this single witness, even if it had been more positively expressed, in contradiction to the written certificate of himself and the other surveyors. There seems no room for misapprehending this certificate. Whatever conversation may have passed respecting the drift way while the premises were under view, they do not say they intend to lay the road along the drift way ; but they do say, they intend to run it along the lines and to the corners of the land owners whom they have named. If the description was ambiguous, we might feel reason to enquire elsewhere for their intent ; but when so directly expressed, it is unsafe to look for it in the " I think" of any witness. But where are the other surveyors of the highways, and the practical surveyor who was employed on the occasion ? Why have they not been called to explain or contradict their expressed intention? Their absence may justly render us less willing to receive from

a single witness an intention different from the language of the return.

Amos Wilcox, an overseer, examined as a witness, testified that Mr. Lum pointed out a line which he said was intended by the surveyors as the line of the road, with which the survey, made under the direction of the witness, did not correspond; but as already remarked, I feel bound to recur, not to the opinion of Mr. Lum, but to the return of the surveyors, for their intention.

Mr. Little, one of the freeholders, says, there was a lane on which it was represented the road was laid, and from which the return deviated; but by whom this representation was made he does not state. And farther, that the freeholders and the parties, at the time, understood that the road as intended to be laid, varied from the course as laid. Now if the parties intended a different course from their application, the surveyors could only rightfully pursue or reject the latter. If there is a difference between the drift way and the application, the surveyors finding a road expedient have very properly pursued the application; and in such case it would be unwarrantable for us to say they meant the one, when they have so plainly expressed the other.

One other part of the evidence requires some notice. Mr. Dod, the surveyor, who has recently made an inspection of the premises at the instance of the prosecutors of the present writ, says, A white oak was pointed out to him, which was supposed to be one of the land-marks mentioned in the return, and that it was more than a chain to the west of the course of the road. Now if this be so, and the tree is the same, of which there remains some doubt since that in the return is said to be marked, and this, he says, is not, there is an error somewhere. But who can say it is in the first surveyor or survey, because another surveyor, at a different time, and with a different instrument, guided by course and distance alone, found himself one chain apart at the end of two courses and a distance of more than sixty-three chains? It would be far more extraordinary if they had arrived at the same point.

From a careful review of the evidence, I do not find the first reason supported.

State *v.* Stites & others.

The second reason is, that a part, about seven feet, of the rearward of a bark-house, and a part of one or two of the vats of a tannery, are included within the bounds of the road.

The fact of this reason is fully established; but I cannot hence deduce as a legal result, that the return is therefore to be set aside as unlawfully laid. The 28th section of the act respecting roads, declares that nothing therein contained, shall be construed to extend to pulling down or removing any dwelling house erected, or which may encroach, on any highway. And there is good reason for the protection of a man's castle, but I know no statute, nor any solid argument, and none has been communicated to us by the counsel, which will render more sacred or less liable to intrusion, a bark-house or a tan-yard, than a field, an orchard or a garden.

The last reason is, that the freeholders took a bond from one of the applicants to work the road for ten years and to indemnify the township and county from the expense of bridges, and hence the number for and against the road was rendered equal, and no certificate that the road was unnecessary or injurious, being therefore made, the return was recorded.

Such an inducement if it existed and operated was very reprehensible. I am, however, by no means prepared to say, that we are legally authorized to enquire into the motives which may have influenced, or the causes which may have induced, the determinations of the freeholders, and make them the basis of an order to set aside the return. I am apprehensive the same course of reasoning, which will sustain such a measure, will compel us to listen to the merits, as it is called, of a road, or the expediency and propriety of it. But if we may enquire into all these things, the fact, *ex facto oritur jus*, is not made out satisfactorily to my mind. The only proof is drawn from the affidavit of Mr. Littel. " Mr. Lum made the offer to the freeholders to give such a bond if they would confirm the road, as laid by the surveyors; they deliberated, confirmed the road and called upon Lum to give the bond, which he did. The freeholders directed the bond to be handed to the clerk of the town." The expression here used by the witness, that they confirmed the road is somewhat too strong. They divided and made no certificate. The legal result was that the road was to

be recorded. But, all that is stated by the witness may have occurred, and yet no one have been thereby induced to support the road. He does not venture to say that any one, otherwise opposed, was thereby rendered friendly to it. They may, without incurring censure, have called on him to fulfil his offer, when it appeared that according to their honest and unbiassed judgment, his wishes would be gratified. There is then no explicit, affirmative proof that any one of the freeholders was actuated by the alleged motive or inducement. It is at most but an inference, *potentia remotissima.* The negative evidence is, perhaps, equally strong. Mr. Littel was one of the freeholders, and present at their meeting. He does not state, as we may suppose he would have done, had the fact occurred, that the bond was mentioned while the propriety of the road was under examination. If not mentioned, can be ascertain what remained in the breasts only of the freeholders " *alta mente repostum,*" and say they acted upon it ? I cannot, on such slight grounds, justify to my own mind a presumption discreditable to the freeholders, a severe reproach upon their heads, if not upon their hearts.

Road affirmed.

APPROVED in *State v. Smith,* 1 *Zab.* 93. CITED in *Highway Re.,* 2 *Zab.* 308 ; *Perrine v. Farr,* 2 *Zab.* 365 ; *State* v. *Hale,* 1 *Dutch.* 328 ; *State* v. *Troth,* 5 *Dutch.* 328.